STATE OF MAINE                                    SUPERIOR COURT
PENOBSCOT, SS.                                    Docket No. CV-09-12

MICHAEL and KAREN HACKETT,    )
              Plaintiffs,     )
                              )
                              )
                              )
          v.                  )              **JUDGMENT**
                              )
                              )
MODERN PEST SERVICES,         )
              Defendant.      )


This matter came before the Court for a jury-waived trial on March 2 and 3, 2011, and final arguments were submitted on March 28, 2011. Plaintiffs appeared with their attorney, Charles Budd, Esq. Defendant appeared through Richard Stevenson, its co-president, with its attorney, Mark Beaumont, Esq.

The Hacketts built a new home in Bangor, Maine in 2004.

In January of 2007 Plaintiffs hired Defendant to treat an ant problem at their home. Before contracting for this service, the Defendant represented to the Plaintiffs that Defendant could solve the ant problem without any damage to the Plaintiffs' home and without harm to the family pet. Defendant also stated that the applications would be "clear".

The contract called for four (4) treatments over the course of a year, with the contract to continue year-to-year thereafter unless cancelled by the Plaintiffs. The first treatment occurred in January of 2007 and was to the interior of the home. This application was uneventful and seemed to solve the ant problem. The second and third applications were to the exterior of the home. These applications were uneventful, and there was no visible residue on or damage to the siding after the applications. The fourth application, in October of 2007, is the application over which there is a controversy.

Karen Hackett was home at the time of the October, 2007 application. Unlike the prior applications, this application left a visible substance on the exterior surface of the home. Karen Hackett described the residue as a "white film" with a flour and water consistency. Mike Hackett described the residue as a "milky", "gooey" substance. There were also "droplets" of the substance on the outside of the house. The windows had been washed shortly before the October, 2007 application, and after the application Karen Hackett could not see out at least one of the windows. She immediately began cleaning the windows and was able to effectively remove the substance from the windows.

Karen Hackett called Mike Hackett to discuss the problem, and when Mike Hackett returned home he called Modern Pest to tell them they had made a "mess". The next

1

day, Defendant's representative, Lloyd Ray Bryant, went to the Plaintiffs' home. The parties disagree about the statements and admissions made by Mr. Bryant during his time at the Hacketts' home. The Court accepts the Hacketts' recollection as being truthful and accurate, and finds that the Defendant, through Mr. Bryant:

1. agreed that there was a substance all over Plaintiffs' home, and that it was "bad";
2. stated that the chemical was not mixed properly and that he could tell where the applicator started and stopped;
3. stated that the Plaintiffs had a beautiful home and of all the houses to "mess up on" he questioned why it had to be this one; and
4. decided to see if the rain would remove the substance.

The Court also accepts that Mr. Bryant stated something about the applicator being a different applicator or new to the route, which the Hacketts interpreted as the applicator having been inexperienced (which was not accurate).

Mr. Bryant agreed to power wash the Plaintiffs' house. Unfortunately, the power washing did not occur until the following week, and it was not a particularly good job. However, the power washing did remove the "gooey" substance and improve the situation.

Thereafter, the Hacketts decided that they would clean the siding themselves the next summer. In fact, the Hacketts did not conclude that the siding was damaged until they tried to clean it themselves in the summer of 2008 and were not successful. While the siding apparently does not show the spots when wet, when it is dry the damage is visible. Also, the siding is "dulling".

The Court viewed the Hackett home, and observed sporadic chalky discoloration (light-colored spots/blotches) on the blue siding. The damage is not evident from the street, but it is visible within several feet of the house. The spots are not uniform.

Mr. Thibodeau is a licensed professional engineer. While Mr. Thibodeau does not have a wealth of specific experience with siding failure, nor is he a chemist, he is licensed professional engineer with a material science background. About eighty percent (80%) of his work is as a forensic engineer. Mr. Thibodeau explained the various possible causes for failure of vinyl siding, and he convincingly eliminated the possible causes – other than chemical exposure.[1] Mr. Thibodeau opined that the damage to the siding was due to chemical exposure.[2] The Court accepts this opinion. Additionally, the Court accepts that Mr. Thibodeau had been to the Hackett home before October of 2007 and he did not note any problem with the siding. He believes that had a problem with the siding existed on his earlier visit it would have "jumped out" at him.

Based on the significant observations made by the Hacketts immediately after the chemical application by Modern Pest, no other chemical having being applied to the siding before the Modern Pest application, the admissions by Modern Pest and the

---

[1] Mr. Thibodeau offered this opinion to a reasonable degree of engineering certainty. He additionally testified that chemical exposure was the "only" explanation.

[2] Mr. Thibodeau did not test a sample of the damaged siding, and does not know the exact chemical that caused the damage. However, the damage to the siding, in Mr. Thibodeau's opinion, was due to chemical exposure.

opinions of Mr. Thibodeau, the Court is convinced by a preponderance of the evidence that Defendant's October, 2007 chemical application to the Plaintiffs' home caused damage to the siding.[3]

Mr. Bowden, a 24-year employee of Mainely Vinyl, has a wealth of experience with vinyl siding. Mr. Bowden is currently an estimator for Mainely Vinyl and testified that the siding currently on the Hackett home is Certainteed Monogram, a premium siding, and the color is "Pacific Blue".[4] He estimated that the cost to replace the siding on the Hackett home with the same siding would be $21,035.00[5], and the Court accepts this estimate.

Mr. Thibodeau opined that the life expectancy of the damaged siding was about ½ what it would be without having the chemical degradation (20 years vs. 40 years). Mr. Thibodeau also opined that remediation was not an option as chemical degradation cannot be reversed.

Count I alleges Breach of Contract, Count III alleges Breach of Express Warranty, Count IV alleges breach of Implied Warranty, and Count VI alleges Negligent Misrepresentation. Counts II and V were dismissed upon motion of the defendant.

As noted above, the Court is satisfied by a preponderance of the evidence that Defendant told Plaintiffs that its chemical application would not damage their home or hurt their pet. Thus, Defendant expressly warranted that the home would not be damaged by the Defendant's chemical application. The Court is also satisfied, given the nature of this work, that a warranty was implied that the application would not damage the home. Additionally, the written contract stated that the client would be "satisfied".[6] As noted above, the Court is satisfied by a preponderance of the evidence that the October, 2007 chemical application by the Defendant did damage the Plaintiffs' home. Damages are the same under all three counts.

A difficulty in this case is determining the appropriate damages. While the damage to the siding is evident from a careful examination, one must look from a fairly close distance to notice the discoloration. Additionally, the siding is damaged in some areas more than others, but given the deep color to the siding, partial replacement is not feasible. The appearance of the damaged siding is not particularly severe. However, the decrease in its long-term performance is significant.

Taking all these factors into account, the Court enters Judgment for the Plaintiffs on Counts I, III and IV. Plaintiffs are awarded damages of $15,000.00, plus interest and costs.

---

[3] The Court does not find that the doctrine of res ipsa loquitor has application in this contract case. The Court's finding is based upon, among other things, the combination of the Hacketts' observations of damage immediately after the Defendant's chemical application, the admissions of the Defendant and Mr. Thibodeau's opinions.

[4] Mrs. Hackett also testified that the siding was "Monogram-something" and was "pacific blue".

[5] Mr. Bowden's initial testimony about the siding currently on the Hackett home was without objection; however, the Defendant raised objection when Mr. Bowden testified a second time to this issue in response to the Court's question.

[6] Count I is duplicative of Count III.

With respect to Count VI, Negligent Misrepresentation, the Court is not satisfied that Defendant made any misrepresentations to the Plaintiffs. To establish a claim of negligent misrepresentation a plaintiff must prove that Modern Pest supplied "false information" for the Plaintiffs' guidance, that Modern Pest failed to exercise reasonable care and competence in obtaining or communicating the information and that the plaintiffs justifiably relied on such information. *Chapman v Rideout*, 568 A. 2d 829, 830 (Me. 1990). The chemical product used by the Defendant on Plaintiffs' home had been used by the Defendant on innumerable houses and, when used appropriately, does not cause any damage. Mr. Stevenson clearly testified that Modern Pest provided training to its employees and was careful with its policy and procedures, and the Court accepts that this is accurate. Thus, while the Court is convinced that the application of chemicals by Defendant in October of 2007 to the Plaintiff's home caused the damage, the Court is not satisfied that Modern Pest failed to exercise reasonable care and competence in communicating information about its service. This isolated misapplication does not constitute a misrepresentation. Thus, judgment is entered for the Defendant on Count VI.

The Clerk shall enter upon the docket by reference: Judgment to the Plaintiffs on Count I, III and IV, with total damages of $15,000.00, plus interest and costs.

Dated: May 13, 2011

_____
Ann M. Murray, Justice
Maine Superior Court

Judgment entered upon the docket on 5/18/11.

4